UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LATOYA AARON, as Legal Guardian of DEREK AARON,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>DARREN KING et al.,<br>　　　　　　　Defendants. | Case No. 22-cv-11062<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 21, 2025 OPINION AND ORDER (ECF NO. 44)**

**I.　Introduction**

In May 2019, Detroit police investigated two separate crimes—unarmed robbery and home invasion. ECF Nos. 32-5, 32-8. The unarmed robbery occurred on May 6, 2019 at a Sunoco gas station that Derek Aaron ("Aaron")[1] regularly visited. ECF No. 32-5; ECF No. 1, PageID.4. The home invasion occurred a few days later on May 10, 2019, at a house on the same block as Aaron's house. ECF No. 32-8. Given Aaron's

---

[1] The parties stipulated that the case caption reflect "Plaintiff, 'LATOYA AARON, as Legal Guardian of DEREK AARON, an incompetent individual', [sic] in lieu of Plaintiff, 'DEREK AARON.'" ECF No. 28, PageID.214. For simplicity, the Court will refer to the plaintiff and Derek Aaron both as "Aaron."

connections to the crime scenes and other evidence, including security footage from cameras at or near the crime scenes that showed a suspect resembling Aaron and separate photo lineup identification by the victims of the crimes, defendants Detroit police officers Darren King, Edward Pawlowski, Eugene Fielder, and James McLeod (collectively, the "Officers")[2] sought to arrest Aaron. ECF Nos. 32-3, 32-9, 32-11, 32-15, 32-17. On May 17, 2019, following a report of Aaron's presence at the Sunoco gas station, the Officers dispatched to the gas station, where the events giving rise to Aaron's arrest and the present lawsuit unfolded.[3] Afterward, Aaron was charged with home invasion, unarmed robbery, and resisting and obstructing a police officer. *See* ECF No. 32-24. The charges were later dismissed.

As a result of what transpired during the arrest, Plaintiff Latoya Aaron, as legal guardian of Derek Aaron, sued the Officers in their individual capacities under 42 U.S.C. § 1983, alleging excessive force claims under the Fourth Amendment, and failure to intervene. ECF No. 1.  The Officers

---

[2] The parties stipulated to dismiss police detective Jason Kuhar from this action in response to defendants' motion for summary judgment. ECF No. 34.

[3] At the time of his arrest, Aaron had been diagnosed with autism; however, the Officers contend they were unaware of this diagnosis when they took him into custody. ECF No. 33, PageID.1003; ECF No. 35, PageID.1042.

moved for summary judgment on all claims based on qualified immunity, ECF No. 32, which the Court granted in part and denied in part in its March 21, 2025 opinion and order (ECF No. 43) (the "Opinion"). The Officers now move the Court to reconsider its denial of summary judgment of Aaron's excessive force claim, specifically: (1) its finding that the Officers waived the issue of whether Aaron actively resisted arrest; and (2) its application of the law to the facts in its analysis of the Officers' active resistance argument. For the following reasons, the Court denies the Officers' motion for reconsideration.

## II.   Standard of Review

The Officers bring their motion under Local Rule 7.1(h)(2)(A). Under that rule, the Court will grant a motion for reconsideration of a non-final order only if there was "a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision." E.D. Mich. L.R. 7.1(h)(2)(A). A motion for reconsideration is not a proper means "to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith ex rel. Smith v. Mount Pleasant Pub. Sch.*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003). "Fundamentally, 'a motion for reconsideration is not a second bite at the apple[.]'" *Masjid Malcolm*

*Shabazz House of Worship, Inc. v. City of Inkster*, 2022 WL 866402, at *7 (E.D. Mich. Mar. 23, 2022) (quoting *Collins v. Nat'l Gen. Ins. Co.*, 834 F. Supp. 2d 632, 641 (E.D. Mich. 2011)).

### III. Analysis

#### A.

The Officers first argue that the Court mistakenly held that they waived the issue of whether Aaron actively resisted arrest because they provided no explanation, analysis or authority supporting their argument. To support their position, the Officers point out that: (1) the Court proceeded to assess the active resistance factor as part of its excessive force analysis after deeming this issue waived; (2) the Officers provided citations to the record and jointly considered the second and third *Graham* factors in their argument; and (3) Aaron discussed the active resistance factor in his response to their motion for summary judgment.

Whether the Officers waived the active resistance issue is immaterial because the Court still thoroughly analyzed the merits of that argument, thus "put[ting] flesh on its bones" for the Officers. *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997). Because the Court ultimately decided that a reasonable jury could find that Aaron's noncompliance amounted to passive resistance not justifying a takedown and three subsequent knee

strikes, correcting any mistake regarding waiver of that argument would not change the outcome of the Court's decision. Accordingly, reconsideration is not warranted on this issue.

**B.**

The Officers next argue that the Court "disregarded its own factual findings" when it discussed "the role that 'active resistance' plays in a qualified immunity and excessive force analysis." ECF No. 44, PageID.1159. According to the Officers, the Court accepted facts showing that Aaron "engage[d] in an 'outward manifestation that suggests intentional disobedience or blatant resistance, such as refusing to be handcuffed . . . verbal hostility, or deliberate physical defiance.'" *Id.* at PageID.1160 (quoting ECF No.43, PageID.1147 (citing *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016)). The Officers contend that the Court's factual determinations mean that "Plaintiff's conduct cannot reasonably be confused for anything less than active resistance" under the cited caselaw. *Id.* at PageID.1168.

Contrary to the Officers' contention, the Court did not make factual findings in deciding their motion for summary judgment. Instead, as required by long-standing summary judgment jurisprudence, it viewed the evidence in the light most favorable to Aaron. *See LaPlante v. City of Battle*

*Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) and *United States v. Diebold, Inc.* 369 U.S. 654, 655 (1962)). The Court explicitly stated that, "*when viewing the evidence in the light most favorable to Aaron*," he resisted the Officers only by "keeping his hands in front of himself to prevent handcuffing" and repeatedly asking them what was happening. ECF No. 43 at PageID.1148 (emphasis added). The Court explained, did not find, *that a reasonable jury could find* that Aaron's conduct lacked the volatility, hostility, and intentional disobedience necessary to justify the takedown by King, Fielder, and Pawlowski and the three knee strikes by Pawlowski, thereby constituting excessive force. *Id*. at PageID.1148-49.

      Moreover, a detailed analysis of the caselaw distinguishing active from passive resistance, particularly in the context of a suspect's refusal to be handcuffed, would not change the conclusion that Aaron's behavior—particularly that which the video fails to clarify—could lead a reasonable jury to find that he was not actively resisting arrest. The caselaw clearly establishes that "noncompliance alone does not indicate active resistance." *Shumate v. City of Adrian*, 44 F.4th 427, 446 (6th Cir. 2022) (quoting *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013)). Although, "[active resistance] . . . includes 'refusing to move your hands for

the police to handcuff you,'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015)), it does so only **"*if that inaction is coupled with other acts of defiance*."** *Rudlaff*, 791 F.3d at 641 (citing *Caie v. West Bloomfield Twp.*, 485 F. App'x 92, 94, 96–97 (6th Cir.2012) (emphasis added). Indeed, the Sixth Circuit has found passive resistance "when suspects do not readily present their hands for handcuffing, or even when suspects move their arms slightly while officers are attempting to handcuff them or otherwise gain control of them." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1006–07 (6th Cir. 2024); *see also Smith v. City of Troy*, 874 F.3d 938, 945 (6th Cir. 2017) ("A reasonable juror could conclude that, in pulling his arm away, [plaintiff's] resistance was minimal and that [the officer's] response in taking [the plaintiff] to the ground was excessive."); *Osborn v. City of Columbus, Ohio*, No. 22-3570, 2023 WL 2523307, *1, *5 (6th Cir. Mar. 15, 2023) (describing that an individual pulling their hand away from an officer attempting to detain them "could be considered minimal, passive resistance that cannot justify the [o]fficers' uses of force").

*Shumate* is particularly instructive here. 44 F.4th at 447. In that case, the Sixth Circuit found that the plaintiff pulling his arms away from an officer when the officer attempted to handcuff him amounted to passive resistance

Page **7** of **12**

because it was not coupled with "other acts of defiance." *Id*. The Court held that this was particularly true when the plaintiff had not been told he was under arrest. *Id.*; *see also LaPlante*, 30 F.4th at 580 (finding a genuine dispute of material fact as to whether plaintiff actively resisted arrest when he was not told he was under arrest and when, although plaintiff "moved his hands in the air just as [the officer] was about to handcuff him," it was unclear whether he was surrendering or resisting).

Here, Aaron was never told that he was under arrest.[4] The video footage from the Officers' bodycams shows Aaron keeping his hands in front of his body, despite the Officers' instruction to put his hands behind his back, while two officers maintained control of his arms, and responded to his questions about what was happening. But Aaron's behavior, which lacks any overt indication of hostility, volatility, or danger, could reasonably

---

[4] The Officers argue in their motion for reconsideration that "the preference in excessive force cases that police inform suspects that they are under arrest, is overcome where, based on the circumstances, 'a reasonable person would have realized he was under arrest,' even without being specifically told." ECF No. 44, PageID.1166 (citing ECF No. 35, PageID.1047 (quoting *Ransom v. Louisville Metro*, 2023 WL 6795294, at *4 (W.D. Ky. Oct. 13, 2023)). However, since they argued this for the first time in their reply brief, rather than their opening brief, the argument was waived. *See State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 613 F. Supp. 2d 945, 968 (W.D. Mich. 2009) ("Raising an argument for the first time in a reply brief affords the other side no opportunity to respond.").

be viewed as minimal, passive resistance not justifying a takedown less than 21 seconds after the Officers first approached Aaron. Whether this conduct amounts to "active resistance" under the circumstances presents a question of fact that is more appropriately left to a jury.

Furthermore, some of Aaron's behavior indicated a desire to comply, not resist. In the critical seconds before the takedown, the video is obstructed but Aaron can be heard telling an officer, "Alright, alright, alright" in a submissive manner. ECF No. 32-20, 01:20-01:21. Thus, even if Aaron was found to be actively resisting arrest, his statement indicating compliance right before the takedown occurred could weigh against the use of force. *See Rudlaff*, 791 F.3d at 641 (If a suspect stops resisting arrest and is compliant when the challenged force occurs, this factor weighs against the use of force); *see also Martin v. City of Broadview Heights*, 712 F.3d 951, 959 (6th Cir. 2013*)* ("[T]o the extent the officers contend the force they used was reasonable merely because Martin offered some resistance before he was handcuffed, our precedents foreclose this line of argument."). Accordingly, the Court did not err in concluding that a reasonable jury could determine he was not actively resisting arrest at the time of the challenged force.

The Officers also claim that Aaron's actions after the takedown should qualify as active resistance under the law. The Opinion acknowledged that Aaron "kept his hands in front of himself to prevent handcuffing" after the takedown, ECF No. 43, PageID.1139, but the Court maintains that a reasonable jury could find this does not amount to active resistance. In *Saalim*, the Sixth Circuit acknowledged earlier cases finding that "an individual who had been wrestled to the ground and continued to pull his arms away from police actively resisted arrest by refusing to be handcuffed." 97 F.4th at 1007 (citing *Bell v. City of Southfield*, 37 F.4th 362 (6th Cir. 2022)). But the *Saalim* court distinguishes *Bell* because, in that case, the officers could not gain control of the plaintiff's arms. *Id*. It likewise distinguished two 2012 Sixth Circuit cases where the court "referenced the plaintiffs' failure to present their hands for handcuffing as a factor contributing to a finding of active resistance." *Id*. (citing *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012) and *Caie v. West Bloomfield Twp.*, 485 F. App'x 92 (6th Cir. 2012)). "[I]n both cases, as in *Bell*, the plaintiffs took far more drastic measures to avoid being handcuffed." *Id*. Hagans laid down on the pavement, tightly locking his arms under his body and kicked his feet. *See Hagans*, 695 F.3d at 507, 509. Caie, intoxicated and suicidal, attempted to flee and threatened to

provoke the officers into using deadly force against him, which, in conjunction with his pulling his arms underneath his body, justified the officers' use of force. See Caie, 485 F. App'x at 96.

This case is likewise distinguishable from Bell, Hagans, and Caie. As previously stated, the Opinion noted that Aaron "kept his hands in front of himself to prevent handcuffing" after the takedown. ECF No. 43, PageID.1139. But the bodycam footage does not reveal Aaron taking "more drastic measures to avoid being handcuffed;" it's extremely close-up, oddly-angled, and obstructed views prevent the Court from seeing other actions, if any, which might constitute active resistance from Aaron. ECF No. 32-20, 1:25-2:20. Likewise, the bodycam footage suggests, or at least does not rule out the possibility, that the Officers maintained control of at least one of Aaron's arms during and after the takedown. See id. Viewing the uncertainties left by the videos in the light most favorable to Aaron, as it must, the Court maintains that a reasonable jury could find that any difficulty in handcuffing Aaron after the takedown was not sufficient to constitute active resistance. See LaPlante 30 F.4th at 578 (6th Cir. 2022); see also Saalim, 97 F.4th at 1007-08. Therefore, the outcome of this Court's decision remains the same, and it still finds that whether Aaron

resisted arrest, both before and after the takedown, is a genuine issue of material fact for the jury to decide.

## IV. Conclusion

For all of these reasons, the Court **DENIES** Defendants' motion for reconsideration (ECF No. 44).

Dated: June 26, 2025

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge